# EXHIBIT 2

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

* * * * * * *

Rhonda Harris,

    Plaintiff,

-vs-

KMG Prestige, Inc.,

    Defendant.

Case No. 1:11-cv-1251

Hon. ROBERT J. JONKER

---

GUINAN BISONET, PLLC
Brook J. Bisonet (P70849)
Attorneys for Plaintiff
41 Washington Avenue – Suite 250
Grand Haven, Michigan 49417
(616) 847-1234
brook@thirdcoastlaw.com

EMILY M. PETROSKI (P63336)
TIFFANY A. BUCKLEY-NORWOOD (P69807)
JACKSON LEWIS LLP
Attorneys for Defendant
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
(248) 936-1901 – fax
petroske@jacksonlewis.com
tiffany.buckley@jacksonlewis.com

---

**AFFIDAVIT OF RHONDA HARRIS**

---

I, Rhonda Harris, being duly sworn, state the following:

1. I was employed by KMG Prestige, Inc. beginning November 17, 2008.

2. I was hired as the Site Manager for the Orchard Place Apartment Complex.

3. Prior to my employment with KMG Prestige, Inc., I was site manager for apartment complexes for several years.

4. As site manager for Orchard Place, I increased occupancy and decreased delinquency rates.

5. I was received accolades and positive reviews for my performance as site manager for Orchard Place.

6. During the spring of 2011, the position of site manager for Stonebrook I, II, and III, another site managed by KMG Prestige, Inc., became vacant. I, with support from the Regional Property Manager, Amanda Baldridge, and Stonebrook's asset manager Lori Pung, approached David Soule, Regional Vice President of Operations, about becoming site manager for Stonebrook I, II, and III.

7. I discussed with Mr. Soule the poor condition of the site.

8. Mr. Soule discussed that it would be a difficult site to manage and turn around.

9. Mr. Soule did not discuss a timetable, benchmarks, or goals for the site.

10. Mr. Soule never discussed with me that Ms. Baldridge would be working closely with me at the site.

11. From May of 2011 until the end of the September 2011, I was site manager of Stonebrook I, II, and III.

12. Ms. Baldridge did not perform any duties of site manager at Stonebrook I, II, and III from May 1, 2011 through September 29, 2011.

13. Ms. Baldridge stored files on the stairs regularly.

14. On several occasions, I told Ms. Baldridge that the files needed to be stored in another location because someone would trip on them.

15. In the summer of 2011, I injured my back when I tripped on legal size files stored on office stairs at the Stonebrook Apartment Complex.

16. I reported the accident to Amanda Baldridge.

17. Ms. Baldridge stated that Stonebrook has burdened her for 8 years and we cannot have any more problems here.

18. As a result of the fall, her back is still injured.

19. Due to the injury, Ms. Baldridge suggested I request leave under the Family and Medical Leave Act.

20. While I was on leave, Ms. Baldridge stripped me of my credentials to the system.

21. While I was on leave, Ms. Baldridge admitted to other employees that she would not allow me to come back to work.

22. I returned from my medical leave on November 15, 2011.

23. On the day I returned, I discovered that Kindra Harper had moved into my office and removed my personal belongings.

24. Ms. Harper stated that my belongings were placed in a box.

25. Ms. Harper stated to me that she was sorry and that she was only doing what Ms. Baldridge ordered her to do.

26. Ms. Harper stated that she did not think it looked good for me.

27. On November 15, 2011, Ms. Baldridge stated that I was too old to be Site Manager of the Stonebrook Apartment Complex.

28. On November 15, 2011, Ms. Baldridge stated that at my age I should not be knocking on doors to collect rent, especially at night.

29. Ms. Baldridge, knowing that I had a back injury, forced me to sit on the floor to perform my work that day.

30. On that day, Ms. Baldridge approached me with a list of apparent issues she said she discovered while I was on medical leave.

31. I explained each bullet point with Ms. Baldridge.

32. After discussing the issues, Ms. Baldridge stated that Mr. Soule would be there the next day to discuss the issues with her.

33. When I arrived at work on November 16, 2011, Ms. Baldridge was busy drafting the list of issues she had addressed with me the day before.

34. At that time, Ms. Baldridge informed me that my employment was terminated and that she had already packed my belongings.

35. I went into the upstairs bathroom located in the office to compose myself.

36. When I came out of the office, Mr. Soule was there.

37. Mr. Soule stated that my services were no longer needed.

38. Mr. Soule asked if I had any questions or concerns about the list of issues drafted by Ms. Baldridge.

39. Since I was already told that my employment was terminated, I did not provide explanations to Mr. Soule.

I verify that the facts stated in this Affidavit are true, and that if sworn as a witness, I can testify with personal knowledge as to these facts.

Dated: November 8, 2012

_Rhonda Harris_
Rhonda Harris

Subscribed and sworn to before me
this 8th day of November, 2012
_[signature]_
Notary Public, _Ottawa_ County,
My Commission Expires: 9/7/2016

4