# EXHIBIT 4

### KEY MISREPRESENTATIONS MADE BY PLAINTIFF HARRIS IN RESPONSE TO KMG'S MOTION FOR SUMMARY JUDGMENT[1]

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).[2]

| WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION | WHAT THE RECORD REFLECTS |
|---|---|
| "In the summer of 2011, I injured my back when I tripped on legal size files stored on office stairs at the Stonebrook Apartment Complex." (Pl's Ex. 1, Aff. ¶15; *see* Resp. PageID#450.) | Plaintiff testified and her medical records indicate that she told her physician that she injured her back during an altercation with an underaged drinker.  (Ex. 3, Pl's Dep. 218-19; Ex. 10, Medical Record at P3).  The record also establishes that Plaintiff submitted a short term disability form to extend her FMLA leave which affirmatively asserts that her back pain was not work-related.  (Ex. 3, Pl's Dep. 220; Ex. 2, O'Brien Decl. ¶17; Ex. 2-E, Second Leave Request.) |
| "Due to [my back] injury, Ms. Baldridge suggested that I request leave under the Family and Medical Leave Act."  (Pl's Ex. 1, Aff. ¶19; *see* Resp. PageID#451.) | Contrary to Plaintiff's assertions, the irrefutable evidence of record establishes that Plaintiff requested FMLA leave for treatment of abscesses on her buttocks and leg due to the MRSA virus.  (Ex. 2, O'Brien Decl. ¶¶14-15; Ex. 2-D, FMLA Request.)  While on FMLA leave, Plaintiff requested to extend the leave to correct two herniated discs in her back, which were discovered while she was on leave.  (Ex. 2, O'Brien Decl. ¶17; Ex. 2-E, Second Leave Request.) |

---

[1] Unless otherwise noted, citations in the chart are attached to KMG's principal and reply briefs in support of its Motion for Summary Judgment.  Exhibits denoted "Pl's Ex." are exhibits attached to Plaintiff's response to KMG's Motion for Summary Judgment.

[2] *See also Rojas v. The Roman Catholic Diocese*, 660 F.3d 98, 106 (2d Cir. 2011) ("[W]here 'the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim.'  To hold otherwise, [would] require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings"); *Marsh v. Assoc. Estates Realty*, No. 10-14120 (E.D. Mich., Apr. 5, 2012) ("While the Court is aware of its obligation to view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party, this does not require the Court to accept as true plainly implausible allegations that are directly controverted by the record.") (*citing Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087-88 (6th Cir. 1996) ("The trial court has at least some discretion to determine whether the respondent's claim is implausible.")).

| WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION | WHAT THE RECORD REFLECTS |
|---|---|
| "As a result of the fall, my back is still injured." (Pl's Ex. 1, Aff. ¶18.) | The irrefutable evidence of record establishes that Plaintiff has injured her back on two separate occasions. She incurred the first in 2011, while employed by KMG. (*See* Ex. 2-E, Second Leave Request.) Plaintiff told her physician that she incurred this injury during an altercation with an underaged drinker. (Ex. 10, Medical Record at P3) As anticipated by her physician, Plaintiff only took a leave of absence from employment with KMG for this injury for 5 weeks, when it was surgically corrected by her physician. (*See* Ex. 2-E, Second Leave Request; Ex. 22, Medical Record Verifying Recovery at P2.)<br><br>Plaintiff testified that, after recovery from her first back injury, she "reinjured" her back, in February 2012, after her employment with KMG, while bowling. (Ex. 3, Pl's Dep. 82-85; Ex. 22, Medical Record On New Injury at P1.) Plaintiff also testified that she had surgery to correct this second back injury in September 2012. (Ex. 3, Pl's Dep. 82-85.) |
| Plaintiff speculates that, "[w]hile I was on leave, Ms. Baldridge stripped me of my credentials in the system." (Pl's Ex. 1, Aff. ¶20; Resp. PageID#451.) | The irrefutable evidence of record establishes that Plaintiff was an employee of KMG at all times during her leave and until November 16, 2011. (*See* Ex. 2, O'Brien Decl. ¶28; Ex. 3, Pl's Dep. 184, 187-88.) As Plaintiff testified, no one told her that she was no longer the Site Manager and her pay stayed the same. (Ex. 3, Pl's Dep. 184, 187-88.) At some point during Plaintiff's leave, she did not have access to KMG's internal system because the IT department turned off that access. (*See* Ex. 5, Baldridge 50-51.) When Plaintiff returned from leave, she called the IT department, which immediately turned her access back on. (*Id.*) Baldridge does not have authority to shutoff Plaintiff's access to KMG's system. (*Id.*) |

2

| **WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION** | **WHAT THE RECORD REFLECTS** |
|---|---|
| Plaintiff speculates that "Kindra Harper moved into my office" (Pl's Ex. 1, Aff. ¶23; *see* Resp. PageID#451.) | The irrefutable evidence of record establishes that, prior to Plaintiff's transfer to Stonebrook, the Stonebrook Property Manager's office was located upstairs to avoid distractions. (Ex. 6, Baldridge Decl. ¶17.) When Plaintiff transferred, she moved the office downstairs. (*Id*.) In addition, the record shows that from the time that Plaintiff moved to Stonebrook until her leave, Baldridge repeatedly asked Plaintiff to move into the office upstairs and to move Harper downstairs. (*Id*.) Plaintiff ignored the requests. (*See id.*; Ex. 6-I, 9/2 E-mail.) While Plaintiff was on leave, Baldridge worked in Plaintiff's office upstairs and Harper worked in what Baldridge had always indicated was to be her office downstairs. (Ex. 20, Harper 28.) |
| "Ms. Baldridge, knowing that I had a back injury, forced me to sit on the floor to perform my work [on November 15, 2011]." (Pl's Ex. 1, Aff. ¶29; *see* Resp. PageID#452.) | Plaintiff testified that Baldridge never asked or required that Plaintiff sit on the floor. (Ex. 21, P's Dep. 199-200.) Plaintiff also testified that Baldridge carried a chair into the office for Plaintiff when she asked for one. (*Id.*; *see also* Ex. 5, Baldridge 49-50)<br><br>Specifically, Plaintiff testified as follows at her deposition:<br><br>Q. Did you ask Amanda if there was a chair somewhere else?<br><br>A. Yep, and she pulled the chair from the other room and that's when I sat down there on another chair that was in front of the desk…<br><br>Q. When you asked her for a chair, she gave you a chair, correct?<br><br>A.     Yes.   (Ex. 21, P's Dep. 199). |

3

| **WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION** | **WHAT THE RECORD REFLECTS** |
|---|---|
| "On November 15, 2011, Ms. Baldridge stated that I was too old to be Site Manager of the Stonebrook Apartment Complex." (Pl's Ex. 1, Aff. ¶27; *see* Resp. PageID#451.)<br><br>"Along with Ms. Baldridge's comment about me being too old to work at Stonebrook, she also stated that my health issues made it difficult for her to have me working at Stonebrook." (Pl's Ex. 8, Second Aff. ¶10).<br><br>"At the time of my termination, Ms. Baldridge's statements about the reason for my termination related to my age and perceived physical condition." (Pl's Ex. 8, Aff. ¶11). | Plaintiff testified that the only comment she heard Baldridge make was a vague statement of "at your age, this is too much for you":<br><br>Q. And the comment that you claim she made under oath as you sit here today is that at your age, it's too much for you?<br><br>A. At your age, this is too much for you and what you have been through health-wise, I was like a liability…<br><br>Q. She didn't say you were a liability, did she?<br><br>A. Not to me…<br><br>Q. You never heard Amanda make any of those comments, correct?<br><br>A. Oh, no, no, no, no. She told me that I was too old to be working there with my health issues, oh, yes.<br><br>Q. That's not what you testified to. You testified the comment that she made was at your age, it was too much for you. So what is your testimony regarding what Amanda supposedly told you?<br><br>A. She told me that.<br><br>Q. At your age --<br><br>A. Correct…<br><br>Q. The comment that you claim you heard Amanda make was at your age, this is too much for you?<br><br>A. That's correct…    (Ex. 21, Pl's Dep. 200-02.) |
| "On November 15, 2011, Ms. Baldridge stated that[,] at my age[,] I should not be knocking on doors to collect rent, especially at night." (Pl's Ex. 1, Aff. ¶27; *see* Resp. PageID#451.) | Plaintiff repeatedly testified that the only age-related comment that Baldridge allegedly made to her was that "at your age, this is too much for you." (Ex. 21, Pl's Dep. 200-02.) Plaintiff denied that Baldridge made any other age-related comments:<br><br>Q. Did you ever hear Amanda Baldridge make any other statements which you believe support your contention that you were discriminated against based on your age? ... |

4

| **WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION** | **WHAT THE RECORD REFLECTS** |
|---|---|
|  | A.  Not that I'm aware of.<br><br>Q.  And just to clarify, that would include the entire period, Orchard Place and at Stonebrook?<br><br>A.  Just to clarify, yes, that would be true. ...<br><br>Q.  No other comments you are claiming that she made that were related to your age?<br><br>A.  Correct.  We had a really good relationship…<br>(*Id.* at 202-03.) |
| "When I arrived for work on November 16, 2011, Ms. Baldridge was busy drafting the list of issues she had addressed with me the day before."  (Pl's Ex. 1, Aff. ¶33; *see* Resp. PageID#452.)<br><br>"At that time, Ms. Baldridge informed me that my employment was terminated and that she had already packed my belongings." (Pl's Ex. 1, Aff. ¶34; *see* Resp. PageID#452.) | Plaintiff testified that Baldridge explained the list of issues with her on November 15, 2011, while typing them on the computer, and then printed out the list to review it with Plaintiff.  (Ex. 3, Pl's Dep. 209-10.)  The record evidence also establishes that, Baldridge sent Soule and O'Brien her notes from the meeting that day. (Ex. 2, O'Brien ¶ 23; Ex. 5, Baldridge Dep. 48, 51; Ex. 6, Baldridge Decl. ¶¶ 31-33; Ex. 7, Soule Dep. 44-45; Ex. 8, Soule Decl. ¶¶ 14-15.)<br><br>As to November 16, 2011, Plaintiff testified that Soule was there when she arrived; and Soule, not Baldridge, communicated the termination to her.<br><br>Q.  When you arrived at work that morning, did you have any discussions with Amanda Baldridge that you can recall?"<br><br>A.  No, because David Soule was right there.  …<br><br>Q.  So David was already at the property when you arrived there in the morning?<br><br>A.  Oh, yeah.  He was sitting in the chair waiting to tell me that I was terminated.  (Ex. 3, Pl's Dep. 205.)<br><br>Plaintiff also testified under oath that no one from management, including Baldridge told her that her items were in a box because she was going to be fired. Plaintiff testified that Baldridge did not have time to talk to her that morning before Soule arrived: |

5

| **WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION** | **WHAT THE RECORD REFLECTS** |
|---|---|
|  | Q. Did you ask Amanda why your things were in a box?<br><br>A. Well, she didn't have time for me that morning …<br><br>Q. And no one told you that they were in a box because you were going to be fired the next day, did they?<br><br>A. Anybody?<br><br>Q. No one from management told you?<br><br>A. No one from management told me, no.  (*Id.* at 207-08.)<br><br>Further, the box of items to which Plaintiff refers were not items Plaintiff used while working in the office. They were items that Plaintiff lent to a former co-worker, which the former co-worker never took.  (*See* Ex. 20, Harper 51-52.) |
| "Since I was already told that my employment was terminated, I did not provide explanations to Mr. Soule." (Pl's Ex. 1, Aff. ¶39; *see* Resp. PageID#452.) | Plaintiff testified extensively regarding what she and Soule discussed in regards to the issues that led to her termination.  (Ex. 3, Pl's Dep. 208-09.) |
| "When completing the application, all of the statements were truthful based on what I was told by Flaherty and Collins at the time of my separation." (Pl's Ex. 8, 2d Aff. ¶3; *see* Resp. PageID#461.) | During Plaintiff's deposition, she admitted that Flaherty & Collins terminated her employment for falsifying documents; and she conceded that she lied on her KMG application about how her employment with Flaherty & Collins ended.  (Ex. 3, Pl's Dep. 32, 41-42.)  Specifically, Plaintiff testified as follows:<br><br>Q. And you see this documentation indicates that you were terminated for falsifying applications?<br><br>A. Yes, I see that.<br><br>Q. Specifically that you were terminated for falsifying applications to increase your occupancy; is that what it indicates?<br><br>A. That's what it indicates.<br><br>Q. And that's the reason these individuals told you |

6

| **WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION** | **WHAT THE RECORD REFLECTS** |
|---|---|
| | you were being terminated, correct? <br><br> A.  Correct.   (Ex. 21, Pl's Dep. at 36-37). <br><br> Q. Had you provided a truthful response in your application to KMG, it would have indicated that your reason for leaving was termination, correct?... <br><br> A.       Correct it was termination…(Ex. 3, Pl's. Dep. 41-42). <br><br> The irrefutable evidence of record establishes that Plaintiff lied on her employment application.  Rather than admitting that she was terminated for falsifying records, Plaintiff stated that her employment with Flaherty & Collins ended due to "company downsizing." (*Compare* Ex. 2-B, Application, PageID #163 *with* Ex. 2-C, Flaherty Termination Documents, PageID #174-77.)  In addition to her deposition testimony, Plaintiff's termination form and an email from her to Flaherty & Collins asking for reinstatement, show that knew the actual reason for termination of her employment.  (Ex. 2-C, Flaherty Termination Documents, PageID #174-77.) |
| "Mr. Soule testified that he informed Ms. Baldridge that he would be at the office on November 16th." (Resp. PageID#453.) | Contrary to Plaintiff's assertion, when Soule was asked at his deposition whether he informed Baldridge that he was coming on November 16th, he first stated "I don't know" and then stated "I can't recall."  (Ex. 7, Soule Dep. 47.)   Soule, however, later confirmed in an affidavit that he did not inform Baldridge that he planned to go to Stonebrook on November 16th.  (Ex. 8, Soule Decl. ¶¶17-18.) Rather, it was Sandra O'Brien, who he told he planned to go to Stonebrook on November 16th.  (*Id.*)  This testimony is supported by Baldridge and O'Brien's testimony.  (Ex. 2, O'Brien ¶ 25; Ex. 5, Baldridge Dep. 56-58.) |
| "Ms. Baldridge prepared and signed the entire termination form according to the testimony of Mr. Soule.  Ms. Baldridge testified that she had not prepared the [termination] form nor | Contrary to Plaintiff's assertion, Baldridge testified that, as to the second page, she prepared the bullet points contained in Exhibit A and sent them to Soule on November 15th, after reviewing them with Plaintiff. (Ex. 19, Baldridge Dep. 46.)  Baldridge also testified |

7

| WHAT PLAINTIFF CLAIMS IN HER ELEVENTH HOUR AFFIDAVITS OR OPPOSITION | WHAT THE RECORD REFLECTS |
|---|---|
| added specific information to the second page of the document." (Resp. PageID#453.) | that she did not add the "Exhibit A" language and the initials lines. (*Id.*) Baldridge further testified that, on November 16th, at Soule's direction and in accordance with KMG procedure, she completed portions of the first page of the termination form, as did Plaintiff. (Ex. 19, Baldridge Dep. 74, 75.) She reiterated this same sequence of events in her affidavit. (Ex. 6, Baldridge Decl. ¶¶31-33.) Baldridge's testimony is corroborated by her email and notes listing the bullet points; Soule's deposition testimony; Soule's affidavit; and O'Brien's affidavit. (Ex. 2, O'Brien ¶¶21-28; Ex. 7, Soule Dep. 55; Ex. 8, Soule Decl. ¶ 21 and exhibits A and B.)<br><br>Further, during her deposition, Plaintiff herself admitted that Baldridge drafted the bullet points the day before and reviewed them with her, but it did not have "Exhibit A" or the initials lines. (Ex. 3, Pl's Dep. 209-10.) Plaintiff also admitted that she completed the termination form with Baldridge on the day of her termination. (*Id.*) |
| "Defendant is trying to state that Ms. Baldridge did not make the decision to terminate [Plaintiff] and that she never in fact wanted her terminated." (Resp. PageID#453.) | The record is clear. Soule and Baldridge both testified that, under KMG policy, Baldridge did not have authority to terminate Plaintiff and did not make the decision to terminate Plaintiff. (Ex. 7, Soule Dep. 25; Ex. 8, Soule Decl. ¶23; Ex. 19, Baldridge Dep. 47.) O'Brien also testified that Baldridge did not make the decision to terminate Plaintiff. (Ex. 2, O'Brien Decl. ¶26.) Baldridge further testified that she learned of Plaintiff's termination on November 16th, at the same time as Plaintiff. (Ex. 5, Baldridge Dep. 56-58.) As Soule testified, he did not make the decision to terminate Plaintiff until November 16th, after giving her the opportunity to explain her actions. (Ex. 7, Soule Dep. 48, 51; Ex. 8, Soule Decl. ¶21.) |

4818-4115-4578, v. 2